IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| INNOMARK COMMUNICATIONS, LLC, | : | Case No. 1:16cv01057 |
| Plaintiff, | : | Judge Timothy S. Black |
| v. | : | |
| MARK N. MARTH, | : | |
| Defendant. | : | |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER (DOC# 14)**

### (1)    The Redemption Agreement supersedes the non-compete.

Innomark fails to cite any cases in support of its position that the non-compete is not superseded by the Redemption Agreement. Marth's relationship with Innomark West was created and defined by the Operating Agreement. Marth's relationship with Innomark West was terminated by the Redemption Agreement. The "subject matter" of the Redemption Agreement is the broad subject of the termination of Marth's Membership Interest in Innomark West and the resulting rights and obligations due to one another. Indeed, even Innomark acknowledges that "[t]he covenant not to compete at issue is based on the termination of Marth's interest in Innomark West." (Opposition at p. 4; Doc#16, PageID 703).

Where an agreement terminating a contractual relationship contains a boilerplate merger/integration clause superseding all prior agreements concerning the "subject matter" of the agreement, all provisions of the agreement that created that relationship are superseded unless expressly preserved in the subsequent terminating agreement. *See*, *PatientPoint Network Solutions, LLC v. Contextmedia, Inc.,* No. 1:14-cv-226, 2014 U.S. Dist. LEXIS 37443 at *25-26

(S.D. Ohio 2014). *PatientPoint* is directly on point. PatientPoint's former employee signed an employment agreement containing a non-compete when he was hired. Thereafter, he signed a separation agreement addressing the termination of his employment. The separation agreement included a boilerplate merger/integration clause which expressly superseded "all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to such subject matter." The issue became whether the "subject matter" of the separation agreement included the non-compete when the separation agreement did not specifically mention the non-compete. This Court, analyzing the issue in the context of determining the plaintiff's "likelihood of success on the merits" for purposes of preliminary injunctive relief, found:

> This Court is inclined to conclude that the phrase "pertaining to the subject matter hereof[,]" set forth in the Separation Agreement, is, at least, ambiguous. One could reasonably conclude that the "subject matter" of the Separation Agreement is the broad subject of Hayes' separation from employment with PatientPoint. Certainly, the previous non-compete agreement pertained, in part, to Hayes' separation by governing his ability to compete with PatientPoint for twelve months following his separation.

*Id.* at *26. Taking the analysis one step further, when analyzing the issue on the merits in a motion to dismiss, to the extent the agreement is ambiguous, the ambiguity must be resolved against the drafter – here, Innomark. In drafting the Redemption Agreement, Innomark considered which of Marth's obligations were intended to survive the merger/integration clause and specifically included Marth's obligation to maintain the confidentiality of its trade secrets. It easily could have also included the non-compete, but did not do so.

The result is the same under California law. *See also*, *CESCA Therapeutics, Inc. v. Syngen, Inc.,* No. 2:14-cv-02085, 2015 U.S. Dist. 137816 at *7-8 (E.D. Cal. 2015) (finding arbitration provision contained in Executive Employment Agreement superseded by Mutual

Termination Agreement which contained merger/integration clause). The provision being superseded does not need to be mentioned in the agreement in order for it to be deemed to relate to the subject matter of the agreement, i.e. the termination of the relationship between the parties. (*Id.*)(the arbitration provision was superseded despite the fact that it was not mentioned in the Mutual Termination Agreement).

The Redemption Agreement unquestionably supersedes the non-compete. Accordingly, such a finding negates the need for this Court to engage in any further inquiry. This case should be dismissed.

**(2)** **The Ohio choice of law provision does not apply to the non-compete.**

Even if this Court elects not to dismiss the case based solely upon the superseding Redemption Agreement, the non-compete is void under California law, which is the law that should be applied. In arguing that California should not apply, Innomark asks this Court to simply ignore Section 10.4 of the Operating Agreement. That provision is very clear that the non-compete must be "construed independent of <u>any other provision of this Agreement</u> or any other understanding or agreement between the parties." Innomark fails to explain how Section 11.2 (the choice of law and forum clause) does not qualify as another provision of the Operating Agreement, other than to call it "illogical." To the contrary, it is perfectly logical and, more importantly, it is unambiguous. In addition, the enforcement provisions for the non-compete bolster the fact that Ohio was not contemplated as either the exclusive choice or law or forum for actions pertaining to the non-compete. Section 10.6 begins, "It is the desire of the parties that the provisions of this Agreement be enforced to the fullest extent permissible under the laws and public policies in each jurisdiction in which enforcement might be sought."

This Court should decline Innomark's invitation to interpret the Operating Agreement as if Section 10.4 were not included, and find that the choice of law and forum provision does not apply to the non-compete.

Finally, Innomark does not dispute that in the absence of an agreement by the parties relative to choice of law and forum, this case should be decided under California law. As detailed in Marth's Motion, the factors to be considered in determining the appropriate choice of law to be applied to this contract dispute weigh in favor of applying California law. (Doc#14, PageID 677-680). Innomark did not provide any response to this argument.

### (3) The non-compete is unenforceable under California law

Plaintiff contends that the non-compete is enforceable under California law under the exception found in California Business & Professions Code § 16602.5. This argument is misguided for several reasons. First, Marth agreed to the non-compete upon the purchase of his Membership Interest in Innomark West. Indeed, the very first sentence of Section 10.2 provides that the non-compete is agreed to "[a]s a condition of becoming a member of [Innomark West]." (Doc#1-2, PageID 65). If the non-compete were being agreed to upon the termination of his Membership Interest, it would have been included in the Redemption Agreement. It was not.

Moreover, the non-compete was valid *during* Marth's employment with Innomark and the redemption merely provides for the two-year continuation of the already existing non-compete obligations. *Id*. The fact that the two year time period of the non-compete is *triggered* by dissolution does not mean that it was agreed to "upon or in anticipation of a dissolution." The covenant not to compete was *agreed to* in exchange for and as a condition of the purchase of the 1% Membership Interest. The dissolution of Marth's interest merely starts the clock on the continuation of the purported obligations of the non-compete agreed to in exchange for the membership interest. Accordingly, Section 16602.5 is not relevant here.

4

In addition, Innomark's argument also fails, because the transaction at issue is a "sham transaction" under California common law, specifically pursuant to the frequently-cited case of *Bosley Medical Group v. Abramson* (1983) 161 Cal. App. 3d 284. The issue in *Bosley* was whether the agreement was a "sham devised to circumvent state policy against agreements in restraint of business and professions." *Id.* at 287-8. Even more so than the sale in *Bosley*, the termination of Marth's membership interest is a sham obviously designed to circumvent California public policy. *Id*. Marth's 1% membership interest was purchased by Innomark West for $1.00. Accordingly, the consideration for Marth to agree to an overbroad non-compete provision was $1.00. Innomark effectively concedes that the transaction was a sham and argues that it is appropriate only because *Bosley* involved Section 16601. That is not the law. The law is that a sham transaction may not be utilized to circumvent California public policy, including the public policy against the enforcement of non-competition provisions. *Id*. at 287-8. Here, the non-compete provision in the Operating Agreement was exchanged for a 1% membership interest worth $10.00 that was eventually redeemed for $1.00. Under *Bosley*, this is an unenforceable sham transaction designed to circumvent Section 16600.

Accordingly, the non-compete provision at issue is unequivocally unenforceable under California law.

**(4)** **The case should be transferred to the District Court in California.**

Innomark argues that the first-to-file rule should not apply, "because the parties agreed to exclusive jurisdiction in the state and federal courts of Montgomery County, Ohio, and California public policy does not require a transfer." (Opposition; Doc#16, PageID 707). The first of these two arguments is circular – for the reasons detailed in Section (2) above, the forum selection clause does not apply to the non-compete.

5

Even if there was a forum selection clause that applied to the non-compete, it should be deemed unenforceable. A forum selection clause is unenforceable "if enforcement would contravene a strong public policy in the forum in which suit is brought, whether declared by statute or by judicial decision." *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10, 92 S. Ct 1907 (1972). California's strong public policy prohibiting the enforcement of non-compete agreements has been codified dating back to 1872. *Bosley, supra,* at 288. The Supreme Court of California has affirmed that "Section 16600 represents a strong public policy of the state which should not be diluted by judicial fiat." *Edwards v. Arthur Andersen LLP,* 44 Cal. 4th 937, 949 (2008). The public policy in California is particularly strong relative to the enforceability of forum selection clauses in non-competes. Forum selection clauses in employment contracts will soon be illegal in California. California Labor Code § 925(a)(1) (effective January 1, 2017) (California Senate Bill No. 1241). Although this law does not become effective until effective January 1, 2017, it is an unequivocal pronouncement of the public policy protections afforded to California residents.

Prior to receiving this statutory mandate, California courts were split on whether forum selection clauses should be disregarded in favor of California's strong public policy against non-competes. Some courts have declined to enforce forum selection clauses because of California public policy under factually similar circumstances. *See e.g., Philo v. Giftango LLC*, No. 13cv0094, 2013 U.S. Dist. LEXIS 192574 (S.D. Cal. 2013) (forum selection clause found unenforceable against California resident seeking declaratory relief when the employment was with an Oregon limited liability company).

As Innomark points out, other California courts have enforced forum selection clauses. The two cases cited by Innomark are distinguishable. In *Rowen*, the court found that the forum selection clause was reasonable because the Georgia court could evaluate whether California or

6

Georgia law would apply. *Rowen v. Soundview Communications*, 2015 U.S. Dist. LEXIS 24986 (N.D. Cal. 2015). In other words, the fact that a choice of law analysis is necessary does not automatically make the forum selection clause unreasonable. *Meras Engineering* involved a similar holding involving a federal court in Washington. *Meras Engineering, Inc. v. CH2O, Inc.*, 35 I.E.R. Cas. (BNA) 1038 (N.D. Cal. 2014). Here, Marth's arguments are not limited to choice of law considerations. Indeed, the Operating Agreement here makes clear that the parties desired that the non-compete be enforced "under the laws and public policies in each jurisdiction in which enforcement might be sought." Accordingly, pursuant to the Operating Agreement itself, the parties have agreed that the non-competition provision will be enforced in accordance with California public policy. Regardless, the holdings in *Rowen* and *Meras Engineering* are now moot as their holdings will be superseded by the new statutory prohibition on forum selection clauses in non-compete agreements.

Moreover, in the context of an employment contract, the Court should also take into account the financial ability to bear the costs and inconvenience of litigating in the forum selected by the contract. *Murphy v. Schneider Nat'l, Inc*., 362 F.3d 1133, 1140 (9th Cir. 2004). Here, Marth, a California resident, would face a financial hardship by being forced to litigate in Ohio while he is unable to work. (Marth Decl. at ¶15). As this matter involves Marth's livelihood, he would want to be an active participant in the litigation and it is unreasonable to enforce a forum selection clause that requires him to litigate in a foreign state. (*Id.*)

For all of these reasons, even if the Operating Agreement were interpreted such that the forum selection clause applied to the non-compete, this Court should disregard that clause in light of California's strong public policy prohibiting non-competes within its borders.

## CONCLUSION

In light of all of the foregoing, this Court should GRANT Marth's motion to dismiss this action or, alternatively, transfer the case to the District Court in California, where it may be consolidated with the first-filed action pending there.

                          Respectfully submitted,

                          */s/ Karen T. Dunlevey            .*
                          Karen T. Dunlevey (0067056), Trial Attorney
                          Gretchen M. Treherne (0074376)
                          James M. Stone (0034691)
                          JACKSON LEWIS P.C.
                          PNC Center, 26th Floor
                          201 E. Fifth Street
                          Cincinnati, Ohio 45202
                          Telephone: (513) 898-0050
                          Facsimile: (513) 898-0051
                          Karen.dunlevey@jacksonlewis.com
                          Gretchen.treherne@jacksonlewis.com
                          James.stone@jacksonlewis.com

                          *Counsel for Defendant Mark Marth*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of November, 2016, the foregoing was electronically filed with the Clerk of Courts, which will automatically send notification of such filing to the following attorneys of record:

Timothy G. Pepper
Valerie M. Talkers
*Counsel for Plaintiff Innomark Communications, LLC*

                          /s/ *Karen T. Dunlevey            .*
                          Karen T. Dunlevey

4849-6626-2588, v. 1