UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| INNOMARK COMMUNICATIONS, LLC, | : | Case No. 1:16-cv-1057 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| MARK N. MARTH, | : | |
| | : | |
| Defendant. | : | |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER TO PROPER VENUE (Doc. 14)**

This civil action is before the Court on Defendant's motion to dismiss or, alternatively, transfer to proper venue (Doc. 14) and the parties' responsive memoranda (Docs. 16, 18).

## I. BACKGROUND FACTS

For purposes of this motion to dismiss, the Court must: (1) view the complaint in the light most favorable to Plaintiff; and (2) take all well-pleaded factual allegations as true. *Tackett v. M&G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009).

Plaintiff Innomark's primary business is creating retail environments that attract, engage, and convert customers, through designing and producing a variety of retail displays, signage, and packing. (Doc. 2 at ¶ 2). Defendant was hired by Plaintiff in 2013 to assist in the company's growth and development in California and the West Coast. (Doc. 12-2 at ¶ 8). In connection with his employment, Defendant executed an Employment Agreement and Operating Agreement. (*Id.* at ¶¶ 10, 13). On July 20, 2016,

Plaintiff resigned and began working for an alleged competitor, Infinity Images.[1] (*Id.* at ¶¶ 17-18).

On October 17, 2016, Defendant initiated litigation in state court in California requesting a declaratory judgment from the California state court regarding the validity of the restrictive covenants in the Operating Agreement (the "California Action"). (Doc. 2 at ¶ 28). On November 1, 2016, Innomark removed the California Action to the United States District Court for the Central District of California. (*Id.* at ¶ 30). The

California Action is currently pending in the United States District Court for the Central District of California, Western Division. On November 7, 2016, in the California Action, Innomark filed a Motion to Dismiss or, In the Alternative, to Transfer the California Action to Ohio. *See* Case No. 2:16cv8136 at Doc. 5.

Here, Defendant seeks to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(6) or, alternatively, to transfer this action to the United States District Court for the Central District of California where it may be consolidated with the first-filed action pending there.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." To show grounds for relief, Fed. R. Civ. P. 8(a)

---

[1] Infinity Images offers full-service printing for marketing and advertising projects. (Doc. 12-2 at ¶ 18). Infinity Images employs designers who work with clients to develop images or "advanced immersive visual experiences." (*Id.*) Infinity Images provides full printing services, as well as 3D engineering for retail displays and other projects.

2

requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.*

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the case shall be dismissed. *Id.* (*citing* Fed. Rule Civ. P. 8(a)(2)).

### III. ANALYSIS

#### A. Enforceability of Non-Compete

"Under Ohio law, the interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008). The Court's role in interpreting a contract is to ascertain the intent of the parties, which is presumed to reside in the language they used in their agreement. *Id.* at 763. When interpreting a contract, "the contract must be construed as a whole" in order to give "reasonable effect to every provision in the agreement." *Id.* Common words are to be given their plain and ordinary meaning unless a "manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." *Id.* at 764. *See also Nature Conservancy, Inc. v. Sims*, 680 F.3d 672, 676 (6th Cir. 2012) ("In determining a contract's plain meaning, the court is obligated to read the parts of the contract as a whole, and when possible should embrace an interpretation that promote[s] harmony between…provisions.").

Contract language is ambiguous when its meaning cannot be determined from the four corners of the agreement, or when the language at issue is subject to two or more reasonable interpretations. *Savedoff*, 524 F.3d at 763. If the language in the contract is ambiguous, the court should generally construe it against the drafter. *Cent. Realty Co. v. Clutter*, 406 N.E.2d 515, 517 (Ohio 1980). Extrinsic evidence is admissible "to ascertain the intent of the parties when the contract is unclear or ambiguous, or when

4

circumstances surrounding the agreement give the plain language special meaning." *Graham v. Drydock Coal Co.*, 667 N.E.2d 949, 952 (Ohio 1996).

### 1. *Redemption Agreement*

Innomark West was formed to aid in the growth and development of Innomark's presence on the West Coast. (Doc. 12-2 at ¶ 9). Defendant was initially hired to be the President of Innomark West. (*Id.* at ¶ 10). In addition to Defendant's employment with Innomark and his position as an executive with Innomark West, Defendant became a member of Innomark West. (*Id.* at ¶ 12). On December 16, 2015, Defendant's interest with Innomark West terminated when he executed a Membership Interest Redemption Agreement (the "Redemption Agreement"). (Doc. 1-2 at PageID 73-78). On December 31, 2015, Innomark West was merged out of existence and absorbed by Innomark. (Doc. 12-2 at ¶ 15). The Redemption Agreement contains a merger clause that provides:

> This Agreement embodies the entire agreement of the parties with respect to the subject matter contained herein and supersedes all prior agreements with respect to such subject matter.

Redemption Agreement, Section 5.1.

Defendant argues that the Redemption Agreement (the merger clause) supersedes

5

the non-compete and all rights and obligations under the Operating Agreement.[2]

Defendant's argument conflicts with the plain language of the merger clause which applies only to "the subject matter" within the Redemption Agreement. The non-competition provision is not addressed in the Redemption Agreement, and because the merger clause only applies to subject matter within the Redemption Agreement (Defendant's membership interest with Innomark West), the Court cannot find that the Redemption Agreement supersedes the non-compete as a matter of law.

---

[2] In support of this argument, Defendant cites *PatientPoint Network Solutions, LLC v. Contextmedia, Inc.*, No. 1:14cv226, 2014 U.S. Dist. LEXIS 37443, at *25-26 (S.D. Ohio Mar. 21, 2014). In that case, PatientPoint's former employee signed an employment agreement containing a non-compete when he was hired and then signed a separation agreement addressing the termination of his employment. The separation agreement included a merger/integration clause which superseded "all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to such subject matter." The issue was whether the "subject matter" of the separation agreement included the non-compete. This Court analyzed the issue in the context of determining PatientPoint's "likelihood of success on the merits" for purposes of awarding injunctive relief after briefing and a hearing. In dicta in a footnote, the Court noted that it was "inclined to conclude that the phrase 'pertaining to the subject matter hereof[,]'…is, at least, ambiguous." *Id.* at 26. Accordingly, Defendant argues that this Court should similarly determine that the language in the Redemption Agreement is ambiguous, and to the extent that the agreement is ambiguous, it should be resolved against the drafter—Innomark. However, the context of the two cases is very different. In *PatientPoint*, this Court determined that the plaintiff failed to establish a likelihood of success on the merits for purposes of injunctive relief -- the Court did not dismiss the claim or preclude PatientPoint from offering extrinsic evidence in an effort to resolve the ambiguity. Additionally, the factual distinctions in the two cases are notable. In *PatientPoint*, the employee stopped working after signing the separation agreement. Here, Defendant continued to work for Innomark for approximately seven months after signing the Redemption Agreement. These factual distinctions are important in determining whether the plain language of the contract is ambiguous.

### *2. Choice of Law Provision*

Next, Defendant argues that Article X (the non-competition agreement) should be read independently of any other provision in the Operating Agreement, including the choice of law and forum selection provisions in Section 11.2.

The Court finds that while the parties intended Section 10.2 and 10.3 (the non-competition and non-solicitation provisions) of the Operating Agreement to be independent obligations, they must be construed in context with the entire Operating Agreement. Section 10.4 of the Operating Agreement states:

> The restrictive covenants contained in Section 10.2 and 10.3 of this Agreement shall be construed as agreements which are independent of any other provision of this Agreement or any other understanding or agreement between the parties, and the existence of any claim or cause of action of Member against Company, of whatsoever nature, shall not constitute a defense to the enforcement by Company of said restrictive covenants.

This clause provides that the restrictive covenants operate as independent obligations of the parties, and that a breach of claim regarding any other obligation in the Operating Agreement does not render the covenants void. This Court is obligated to read the parts of the contract as a whole and "embrace an interpretation that promote[s] harmony between…provisions." *Nature Conservancy*, 680 F.3d at 676. For example, Sections 10.2 and 10.3 contain numerous terms which are defined in the Operating Agreement outside of those sections. Unless the contract is read as a whole, the terms defined in Sections 10.2 and 10.3 are nonsensical.

Similarly, the choice of law provision applies to Sections 10.2 and 10.3, just as it applies to the remainder of the Operating Agreement. The parties included an Ohio choice of law provision in every agreement they drafted—the Employment Agreement, the Operating Agreement, and the Redemption Agreement. Accordingly, Ohio law governs this dispute.

### B. Motion to Transfer

In the alternative, Defendant argues that this case should be transferred to the Central District of California pursuant to the first-to-file rule. The first-to-file rule is a "well-established doctrine that encourages comity among federal courts of equal rank." *AmSouth Bank v. Dale*, 386 F.3d 763, 791 n.8 (6th Cir. 2004). In deciding whether to transfer a case pursuant to the first-to-file rule, the Court looks to three factors: "(1) the chronology of the actions;[3] (2) the similarity of the parties involved; and (3) the similarity of the issues at stake." *Plating Res., Inc. v. UTI Corp.*, 47 F. Supp.2d 899, 904 (N.D. Ohio 1999). While generally the first suit that was filed should proceed to judgment, "the first-filed rule is not a strict rule and much more often than not gives way in the context of a coercive action filed subsequent to a declaratory judgment." *AmSouth*, 386 F.3d at 781 n.8.

---

[3] The Court notes that while the California Action was filed first, this civil action in this Court is more advanced. On November 7, 2016, Innomark filed a motion to dismiss or transfer venue in the California Action that will not be ripe until the end of December. *See Marth v. Innomark Commc's LLC*, 2:16cv8136 (C.D. Cal. 2016) at Doc. 5. Conversely, Marth's motion to dismiss or transfer venue has already been resolved by this Order.

8

> District courts have the discretion to dispense with the first-to-file rule where equity so demands. A plaintiff, even one who files first, does not have a right to bring a declaratory judgment action in the forum of his choosing. Factors that weigh against enforcement of the first-to-file rule include extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping.

*Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001). In fact, "[c]ases construing the interplay between declaratory judgment actions and suits based on the merits of underlying substantive claims create, in practical effect, a presumption that a first filed declaratory judgment action should be dismissed or stayed in favor of the substantive suit." *AmSouth Bank*, 386 F.3d at 781 n. 8.

Here, Defendant filed a declaratory judgment action in his preferred forum of California, despite agreeing to exclusively litigate claims in Ohio. Accordingly, since equity so demands, this Court declines to transfer this case to California under the first-to-file rule. *See, e.g., Tenke*, 511 F.3d at 551-52. The parties agreed to exclusive jurisdiction in the state and federal courts of Montgomery County, Ohio.

### C. Forum Selection Clause

The parties included an Ohio choice of law and forum selection provision for Montgomery County, Ohio in every agreement they drafted—the Employment Agreement, the Operating Agreement, and the Redemption Agreement. It is illogical and inconsistent that those choices would not also apply to the non-competition and non-solicitation provisions of the Operating Agreement. Forum-selection clauses are *prima facie* valid absent a showing that they are unreasonable, unjust, or invalid. *Moses v. Bus.*

*Card Express, Inc.*, 929 F.2d 1131, 1136 (6th Cir. 1991). Since Defendant has not offered any evidence that the forum selection clauses are unreasonable, unjust, or invalid, this Court finds that the forum selection clauses are valid and enforceable.

### D.  California's Public Policy

Finally, Defendant argues that the forum selection clause should be disregarded and this case should be transferred to California, because of California's fundamental public policy against non-compete agreements. However, California federal courts have enforced forum selection clauses in matters involving non-compete provisions. For example, in *Meras Eng'g, Inc. v. CH2O, Inc.*, No. C-11-389, 2013 U.S. Dist. LEXIS 5426 (N.D. Cal. Jan. 14, 2013), two California employees signed employment agreements with CH2O which included a non-compete clause, a Washington choice of law clause, and a Washington choice of forum clause. After resigning, the two employees went to work for a competitor of CH2O and filed an action in California seeking a declaration that the non-compete was unenforceable, and CH2O in turn filed an action in Washington to enforce the non-compete agreement. The Washington court refused to dismiss or transfer CH2O's case under the first-to-file rule finding that the forum selection clause was enforceable. *Id.* at 10-15. *See also Rowen v. Soundview Commc'n, Inc.*, No. 14-cv-5530, No. 14-cv-5530, 2015 U.S. Dist. LEXIS 24986, at *10 (N.D. Cal. Mar. 2, 2015) (summarizing California district court cases enforcing forum

10

selection clauses despite non-compete provisions contained in the agreements).[4]

Accordingly, public policy does not require that this case be transferred to California.

### IV.    CONCLUSION

For these reasons, Defendant's motion to dismiss or, alternatively, to transfer (Doc. 14) is **DENIED**.

**IT IS SO ORDERED**.

Date:  11/18/16                                                                             *s/ Timothy S. Black*
                                                                                                            Timothy S. Black
                                                                                                            United States District Judge

---

[4] The Court acknowledges that some California courts have declined to enforce forum selection clauses because of California public policy. *See, e.g., Philo v. Giftango LLC*, No. 12cv94, 2013 U.S. Dist. LEXIS 192574 (S.D. Cal. 2013) (forum selection clause found unenforceable against California resident seeking declaratory relief when the employment was with an Oregon limited liability company). Moreover, while forum selection clauses in employment contracts will soon be illegal in California, California Labor Code § 925(a)(1) (effective January 1, 2017) (California Senate Bill No. 1241), this law does not affect the case currently before the Court.