IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (CINCINNATI)

| | | |
|---|---|---|
| INNOMARK COMMUNICATIONS LLC | : | Case No. 1:16-cv-1057-TSB |
| Plaintiff, | : | Judge Timothy S. Black |
| v. | : | |
| MARK N. MARTH | : | **AGREED ORDER** |
| Defendant. | : | |

It is hereby ORDERED, ADJUDGED, AND DECREED as follows:

1. The Plaintiff Innomark Communications LLC ("Innomark") and the Defendant Mark N. Marth ("Marth"), having resolved their disputes, agree to be bound and hereby are bound to the following terms.

2. This Court has subject matter jurisdiction over this action, under the provisions of 28 U.S.C. § 1332(a), and has personal jurisdiction over Defendant Marth. Venue is properly laid in this judicial district.

3. **PROHIBITED ACTIVITIES:** Marth is restrained and enjoined from employment within the United States by any entity which does business in any of the following industry segments through March 31, 2018:

    a) **Retail Signage or Temporary, Semi-Permanent or Permanent Point of Purchase ("POP") Displays**, which utilizes any of the following:

        i. Lithographic printing over 40 inches, except as such printing relates to packaging;

        ii. POP printing of 40 inches or less; or

        iii. Digital printing over 40 inches, which includes any form of graphic reproduction that is based on ink being delivered through a nozzle or otherwise and triggered electronically or other means, excluding lithographic, screen, or graveure methods;

b) **Fulfillment of point of purchase materials** (including warehousing, pick, pack and ship, and the provision of inventory management services); and

c) **Visual Merchandising Materials**, defined to include:

   i. Temporary displays (displays typically made of paper-based boards such as corrugate, foam boards, light weight synthetic materials, etc. and designed for a life span of one week to three months in a retail environment. These displays can be purely for aesthetic/advertising purposes or may be used to hold and merchandise product);

   ii. Semi-Permanent Displays (combination of temporary and permanent materials with an intended lifespan of 3 months to a year or more); and

   iii. Permanent displays (displays made from any variety of durable materials (e.g. wood, wire, metal, or plastics) and designed for a life span of 1 to 5 years or more in a retail environment. These displays can be purely for aesthetic /advertising purposes or may be used to hold and merchandise product. Permanent Displays often include interactive elements such as video, audio, touch-screen and other technologies).

4. **PERMITTED ACTIVITIES.** Marth is permitted to work for any entity that does not do business in any of the industry segments identified in Section 3, "Prohibited Activities", above, and subject to the restrictions in Section 4, specifically including, but not limited, to his being permitted to work in the following segments:

   a) Commercial printing of 40 inches or less;

   b) Screen printing;

   c) Graveure printing;

   d) Design and manufacturing/production of Store Décor (Typically made of durable materials and attached to the physical interior of a retail environment with an intended lifespan of 3 years or more. Store Décor elements are used as interior decorations or way-finding signage and are intended to enhance the store environment and NOT hold product); and

2

18521402.1

e)     Retail Fixtures (limited to hardware—structural, product-holding shelving, racks or similar elements in a retail environment intended to hold product and typically constructed of wood, steel, high-density plastics and other durable materials. Fixtures may include frames to hold signage, but may not involve printed graphic elements or video displays, e.g. racks, lighting, gondolas), as long as the Store Fixtures do not include graphics.

5. **PACKAGING.** Marth is permitted to work for an entity in the business of packaging under the following conditions and restrictions:

   a)     Marth is permitted to work for an entity which does business in Specialty/Short-Run Packaging (Specialty Packaging commonly involves high end, limited quantity packaging for premium products. Specialty Packaging commonly involves custom structural designs, advanced printing effects (such as gloss-dull sheen combinations, metallic inks or metalized substrates) and specialty treatments such as foil stamping, embossing, etc.);

   b)     Marth is permitted to work for an entity which does business in Primary Packaging (Primary Packaging is the term used to designate the layer of packaging in immediate contact with the product; in other words, the first packaging layer in which the product is contained. As such, primary packaging is constructed both with the product itself and any existing secondary layers of packaging in mind. Primary Packaging is typically used for general products and produced in high volumes with standard materials and print methods. Long-runs of 500 thousand or more per run, contains a commodity product and commodity graphics);

   c)     Marth is permitted to work for an entity which does business in Premium Packaging, including bags and set-up boxes;

   d)     Notwithstanding the foregoing, Marth is restrained and enjoined from employment by any entity which does Premium Packaging business with Luxottica, with the exception of Oakley;

   e)     Notwithstanding the provisions in Paragraph 6 below, Marth is restrained and enjoined from contact with any current Innomark packaging customer through December 31, 2018, including, but not limited to, Warner Brothers. A list of Innomark's current packaging customers will be produced to Marth's counsel and incorporated herein by reference; and

   f)     Marth is ordered to inform Innomark prior to accepting any employment in

18521402.1

the packaging industry through March 31, 2018.

6. Marth is restrained and enjoined from communicating, regardless of who initiates the contact, with any current Innomark customer through March 31, 2018.

7. Marth is restrained and enjoined from communicating, regardless of who initiates the contact, with any current Innomark employee, except for social purposes, through March 31, 2018. Notwithstanding the foregoing, Marth shall have no contact with any member of the Innomark executive committee through March 31, 2018.

8. In the event enforcement of this Agreed Order is sought, the prevailing party shall be entitled to its reasonable attorney fees. However, if any party believes the other party is violating the Agreed Order, the party so believing will provide a written notice three (3) or more business days in advance of filing an enforcement action of the alleged violations and the parties will confer in good faith to see if an informal resolution can be reached prior to filing a court action. Said written notice shall be deemed sufficient if sent via email to the parties' counsel of record in this action.

9. This Consent Judgment supersedes and replaces in all forms any and all previous restrictive covenants between Marth and Innomark.

10. This Court shall retain jurisdiction and venue over the parties in an action to enforce the terms of this Agreed Order.

11. This Agreed Order is the final adjudication of all claims made in this case, and shall terminate the litigation in all respects.

IT IS SO ORDERED this _2nd_ day of March, 2017.

_____
UNITED STATES DISTRICT JUDGE

Clerk: Copies to all parties.
4850-5778-7458, v. 1

18521402.1